**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Hakim Watkins,                                             Civil No. 13-868 (DWF/JSM)

          Plaintiff,

v.                                                                          **MEMORANDUM
                                                                            OPINION AND ORDER**

David Velasquez, Jamie
Angerhofer, and City of
Brooklyn Park,

          Defendants.

---

Joshua R. Williams, Esq., and Timothy M. Phillips, Esq., Law Office of Joshua R. Williams, PLLC, counsel for Plaintiff.

Jon K. Iverson, Esq., and Stephanie A. Angolkar, Esq., Iverson Reuvers Condon, counsel for Defendants.

---

**INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment brought by Defendants David Velasquez ("Officer Velasquez"), Jamie Angerhofer ("Officer Angerhofer") (together, the "Officers"), and the City of Brooklyn Park (the "City") (collectively, "Defendants"). (Doc. No. 25.) For the reasons set forth below, the Court grants the motion.

**BACKGROUND**

On February 21, 2010, Brooklyn Park police responded to a reported assault of a Metro Transit bus driver involving a group of males. (Doc. No. 28 ("Angolkar Aff.") ¶ 3,

Ex. 2 ("Velasquez Dep.") at 9-16.)  The responding officers were advised that one of the male suspects had threatened to kill the bus driver.  (*Id*. at 11-12.)  Officers located a group of five males who matched the description of the suspects.  (*Id*. at 13; Angolkar Aff. ¶ 6, Ex. 5 ("Edwards Dep.") at 17; Angolkar Aff. ¶ 2, Ex. 1 ("Watkins Dep.") at 33-34.)  Plaintiff Hakim Watkins ("Watkins") submits that after he got off the bus, he walked with four other boys, saw a police squad car, and stopped.  (Watkins Dep. at 34.)

Officer Velasquez approached the group and told them to take their hands out of their pockets.  (Watkins Dep. at 34-35; Velasquez Dep. at 18.)  Officer Velasquez then told Watkins to put his hands on top of his head to make sure Watkins did not have a weapon.  (Velasquez Dep. at 15; Watkins Dep. at 35; Angolkar Aff. ¶ 5, Ex. 4 ("Squad Video").)[1]  Watkins placed his hands on his head.  (Velasquez Dep. at 18.)  Officer Velasquez testified that he randomly picked Watkins to pat down first because Watkins was the first one in his line of sight.  (*Id*. at 15.)

Officer Velasquez testified that after Watkins initially complied, he became uncooperative.  (*Id*. at 18.)  For example, Officer Velasquez claims that after asking Watkins what took place, Watkins became upset, claimed that he did not do anything wrong, tensed his body, and refused to stay still.  (Watkins Dep. at 35-37; Velasquez Dep. at 16, 18-19; Squad Video.)  Officer Velasquez told Watkins to relax and attempted

---

[1]   Squad video footage of the encounter with Watkins exists and is part of the record. Watkins and Defendants both contend that the footage supports their respective versions of the facts.

to pat-search him. (Velasquez Dep. at 16, 20.) Officer Velasquez decided to remove Watkins from the group and Watkins continued to resist being moved. (Velasquez Dep. at 16-17; Squad Video.)

Officer Velasquez walked Watkins toward his squad car and attempted to lean Watkins over the car. (Velasquez Dep. at 17, 21.) Watkins claims that he was pulled toward the squad car, that his head was slammed onto the hood, and that he was choked and violently taken to the ground. (Watkins Dep. at 35, 41-43, 48, 74.) Defendants contend that Watkins continued to tense up and resist commands, and that Officer Velasquez had to forcefully "wrestle" with Watkins and hold him over the car. (Velasquez Dep. at 17, 21-22.) Officer Velasquez testified that Watkins was struggling and that he lost control of one of Watkins' arms. (*Id*. at 17.) Officer Velasquez claims that he attempted to grab one of Watkins' arms and "bear hug" him in an attempt to control the other arm. (Velasquez Dep. at 21-22; Squad Video.) Watkins asserts that he was put in a choke hold, but acknowledges that Office Velasquez's arms were around Watkins' neck and shoulders and that Watkins was able to speak and may have said "let me go." (Watkins Dep. at 44-45, 48; Squad Video.) Watkins was moving around and his legs were kicking or "flailing around." (Velasquez Dep. at 17, 39-40; Angolkar Aff. ¶ 4, Ex. 3 ("Angerhofer Dep.") at 13; Edwards Dep. at 23-24; Squad Video.)

Officer Velasquez was able to secure Watkins' left arm behind his back, but continued to attempt to secure his right arm. (Velasquez Dep. at 22; Squad Video.) Officer Velasquez was assisted by a Community Service Officer and, eventually, Officer Angerhofer. (Velasquez Dep. at 17-18; Angerhofer Dep. at 11-12.) Officer Angerhofer

3

testified that when he arrived on the scene, he witnessed Officer Velasquez struggling with Watkins and that Officer Velasquez was trying to get Watkins' hands behind his back. (Angerhofer Dep. at 11-12.) With help, Officer Velasquez attempted to place Watkins in handcuffs. (Velasquez Dep. at 22; Angerhofer Dep. at 12.) Defendants contend that Watkins, however, pulled his arm away. (Angerhofer Dep. at 12; Squad Video.) At some point, Officer Angerhofer suggested that Officer Velasquez take Watkins to the ground as the Officers attempted to handcuff Watkins. (Velasquez Dep. at 22.) Officers Velasquez and Angerhofer then took Watkins to the ground and placed him in handcuffs. (Watkins Dep. at 50; Velasquez Dep. at 25; Angerhofer Dep. at 12-13; Squad Video.) Watkins complained that the handcuffs were too tight. (Watkins Dep. at 52-53.) Officer Velasquez checked the handcuffs and confirmed they were placed appropriately. (Velasquez Dep. at 26, 41-42.) Watkins was placed in the back of the squad car. (Squad Video.)

Despite the above record evidence, Watkins asserts that he did not resist at any time during his encounter with the police. (Doc. No. 32 ("Watkins Decl.") ¶¶ 2-3.) Watkins claims that his face hit the hood of the car during the struggle. (Watkins Dep. at 41.) Watkins claims that his lip was lacerated and a prior back injury was aggravated. (*Id.* at 53-54.) In addition, he asserts that he had marks on his wrists from the handcuffs. (*Id.* at 53-54.) Watkins did not seek medical treatment. (*Id.*)

In his First Amended Complaint, Watkins asserts a claim under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments for excessive force (Count I);

4

battery (Count II); and infliction of emotional distress ("IIED") (Count III). (Doc. No. 10, First Am. Compl. ¶¶ 29-43.) Defendants move for summary judgment on all claims.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d at 747. However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Excessive Force Under 42 U.S.C. § 1983

Watkins asserts a claim of excessive force against Officers Velasquez and Angerhofer. In particular, Watkins argues that, viewing the facts in the light most favorable to him, a reasonable officer on the scene would not have used the force employed by Officers Angerhofer and Velasquez. In support, Watkins maintains that he was slammed onto the hood of the car, choked, and violently taken to the ground. Defendants argue that Officers Angerhofer and Velasquez are entitled to qualified immunity from Watkins' excessive force claim.

The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). To overcome the defense of qualified immunity, a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Fourth Amendment prohibits unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The Court evaluates excessive force claims under an objective-reasonableness test. *Id*. at 397. In determining whether the use of force is

6

"reasonable" under the Fourth Amendment, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests at stake. *Id*. at 396 (citation omitted). The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See id*. The proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The Court's decision here turns on the question of whether, taking the facts in the light most favorable to Watkins, Watkins was subjected to excessive force so as to violate a constitutional right and, if so, whether that right was clearly established at the time.

Watkins contends that the use of any force was unreasonable because: Officers Velasquez and Angerhofer did not know which of the suspects, if any, had interacted with the bus driver; the bus driver did not report that any weapons were involved; Watkins did not resist or attempt to flee; and Watkins was fourteen years old at the time of the incident. Defendants contend, however, that the force used was objectively reasonable because: the Officers were responding to a report of a serious crime—assault of a bus driver where someone threatened to kill the driver; Watkins resisted and impeded the Officers from determining if he had a weapon; and Watkins continued to resist until he was handcuffed. Moreover, Defendants contend that Watkins did not suffer any permanent injury from the use of force.

7

The use of some force is reasonable when an arrestee resists arrest or disobeys orders. *See, e.g.*, *Cook v. City of Bella Villa*, 582 F.3d 840, 851 (8th Cir. 2009); *Foster v. Metro Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). The same is true when an officer is performing an investigatory stop. *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id*. at 396-97 (citation omitted).

Here, Officers Velasquez and Angerhofer responded to a reported assault of a bus driver, where one of the suspects allegedly threatened to kill the driver. When Officer Velasquez approached the five suspects, he and a Community Service Officer were outnumbered, and Officer Velasquez decided to check for weapons. Officer Velasquez told Watkins to put his hands on his head and Watkins initially complied. While Watkins disputes that he resisted Officer Velasquez's commands, the Court has the benefit of the Squad Video, which shows that Watkins was not cooperative during the investigatory stop. Specifically, consistent with the testimony of Officer Velasquez, the video shows that after Watkins initially complied with the command to place his hands on his head, Watkins quickly became uncooperative by moving around and refusing to remain still. In addition, when Officer Velasquez moved Watkins to the squad car to handcuff him, Watkins continued to move around. At one point, Officer Velasquez appears unable to handcuff Watkins and orders Watkins to "loosen up" and Watkins attempts to lift his

8

head and shoulders to turn around. Officer Velasquez then used additional force to gain control, such as forcing Watkins onto the hood of the car and putting an arm around Watkins' neck and shoulders. In addition, there is no dispute that Watkins' legs were moving during this struggle. Watkins asserts that he moved his legs to regain balance. (Watkins Dep. at 55.) However, there is other testimony, and video evidence, that Watkins was kicking or, at least, flailing. (Velasquez Dep. at 17, 39-40; Angerhofer Dep. at 13; Edwards Dep. at 23-24; Squad Video.) Watkins' subjective intentions do not matter, as it is the objective reasonableness of an officer's belief as to the appropriate level of force that is relevant. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 206 (2001) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."), *overruled in part on other grounds*, *Pearson*, 555 U.S. at 236.

The Court concludes that, under the circumstances presented, the Officers' use of force to restrain and handcuff Watkins was objectively reasonable and does not amount to a violation of the Fourth Amendment. The Officers' attempts to search him for weapons and later to handcuff him were met with resistance. Resistance may justify force. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) (holding that pushing and shoving by police officer did not constitute excessive force when the plaintiff defensively moved away from the police officer during an arrest); *see also Kain v. City of Eden Prairie*, Civ. No. 1740, 2011 WL 797455, at *7 (D. Minn. Feb. 28, 2011) (concluding that turning away from an officer, despite it being a natural reaction to a dog

9

bite, was reasonably viewed as resistance and justified the officer's actions in grabbing the suspect's arm and pulling her to the ground).

Even if the use of force was not objectively reasonable and Watkins could establish a constitutional violation, such a violation must be clearly established. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S.730, 739 (2002). Here, there was sufficient legal precedent that could support the Officers' use of force under the circumstances presented. *See, e.g.*, *Crumley*, 324 F.3d at 1003; *Kain*, Civ. No. 1740, 2011 WL 797455, at *7.[2]

In sum, viewing these facts in the light most favorable to Watkins, no reasonable juror could conclude that the force used during the February 21, 2010 incident was not objectively reasonable. Nor could a reasonable juror conclude that the Officers violated a clearly established constitutional right. Thus, the Officers are entitled to qualified immunity and summary judgment is warranted on Watkins' excessive force claim.

---

[2] Defendant also asserts that Watkins' alleged injuries—laceration to his lip and aggravated back injury—are *de minimis* and therefore could not support a finding of a constitutional violation. Prior to *Chambers v. Pennycook*, 641 F. 3d 898, 901, 906 (8th Cir. 2011), whether an excessive force claim required a minimum level of injury remained an open question. 641 F.3d at 904, 908. For purposes of the qualified immunity analysis here, the Court concludes that Watkins' alleged injuries are not *de minimis*. *See, e.g.*, *Copeland v. Locke*, 613 F.3d 875, 881-82 (8th Cir. 2010) (finding lacerations from handcuffs and an injury to the knee are not *de minimis*). Even so, because the Court has concluded that Officers Velasquez and Angerhofer are entitled to qualified immunity on Watkins' excessive force claim, the issue of *de minimis* injury is moot.

**III.     Battery**

Watkins also asserts a claim for battery against Defendants. Battery is "an intentional, unpermitted offensive contact with another." *Johnson v. Morris*, 453 N.W.2d 31, 40 (Minn. 1990). Defendants argue that Watkins' battery claim is barred by the doctrine of official immunity. Under Minnesota law, public officials are automatically entitled to official immunity from state law claims when their duties require the exercise of discretion, so long as the officer is not guilty of a willful or malicious wrong. *See id.* at 41-42. Police officers are generally classified as discretionary officers. *Id*. at 42. Here, there is no question that Officers Velasquez and Angerhofer's actions required the exercise of discretion. *See, e.g., Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn. 1992). Accordingly, to defeat official immunity, Watkins must establish malice or willfulness. *See, e.g., Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006) ("Official immunity prevents a public official charged by law with duties which call for the exercise of his judgment or discretion from being held personally liable for damages, unless the official has committed a willful or malicious act.") (internal quotations omitted). Malice in the context of official immunity requires proof of an officer's intentional doing of a wrongful act without legal justification or excuse or, stated another way, a willful violation of a known right. *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991).

As explained above with respect to Watkins' excessive force claim, viewing the evidence in the light most favorable to Watkins, no reasonable juror could find that the force used constituted a violation of the law. Thus, no reasonable juror could conclude

11

that Officers Velasquez and Angerhofer intentionally engaged in a wrongful act without legal justification. Accordingly, summary judgment is properly granted as to Watkins' battery claim.

In addition, the City asserts that it is entitled to vicarious official immunity on Watkins' battery claim. An employer may be vicariously immune from liability if the conduct of a government employee is protected by official immunity. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316-17 (Minn. 1998); *Pletan*, 494 N.W.2d at 42 ("Generally, if the employee is found to have immunity, the claim against the municipal employer has been dismissed without any explanation."). Because the Court finds that there is no basis for imposing liability on the Officers, the Court concludes that there is no basis for imposing vicarious liability on the City. Accordingly, the City is entitled to summary judgment on Watkins' battery claim.

## IV. Intentional Infliction of Emotional Distress

Under Minnesota law, there are four elements to an IIED claim: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983) (citing Restatement (Second) of Torts § 46(1) (1965)). Watkins' claim for IIED fails for two primary reasons. First, no reasonable juror could conclude that the Officers' behavior was "extreme and outrageous." "Extreme and outrageous" conduct is that which is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard*, 330 N.W.2d at 439 (citations omitted). Based on the facts and

12

circumstances discussed above, no reasonable juror could conclude that the Officers' actions were unreasonable, let alone extreme and outrageous.  Second, Watkins has failed to raise a genuine issue of fact that could lead a juror to conclude that Watkins has suffered severe emotional distress.  "Severe emotional distress" is "distress so severe that a reasonable person could not be expected to endure it.  *Id*. at 440.  Watkins submits that he suffers from anxiety when around Brooklyn Park police.  (Watkins Dep. at 57.)  This evidence, as a matter of law, does not support the type of distress required to sustain an IIED claim.  Accordingly, the Court grants summary judgment as to Watkins' IIED claim.

## CONCLUSION

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. [25]) is **GRANTED**; and

2. Defendants are entitled to judgment on all of Watkins' claims.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  May 21, 2014              s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge